1997 ND 99

In the Matter of the ADOPTION
OF J.M.H., a Minor.

M.H., Petitioner and Appellee,

v.

T.J.E., Jr., Respondent and Appellant,

and

H.C. Wessman, as Director of Human
Services of the State of North Da-
kota, and M.M.H., Respondents.

STATE of North Dakota, County of Cass,
ex rel., T.J.E., Jr., Plaintiff and
Appellant,

and

J.M.H., a Minor Child, by and through
his Guardian ad litem, Plaintiff,

v.

M.M.H., Defendant and Appellee.

Civil Nos. 960270, 960271.

Supreme Court of North Dakota.

June 3, 1997.

Rehearing Denied July 17, 1997.

Leslie Johnson Aldrich, of Johnson Law Office, Fargo, for appellees M.H. and M.M.H.

Robin L. Olson, of Olson Law Office, Grand Forks, and Brian W. Nelson (on brief), of Nelson Law Office, Fargo, for appellant.

SANDSTROM, Justice.

[¶ 1] T.J.E., Jr., (Tom)[1] appealed from an order terminating his parental rights to J.M.H. (James) and granting a petition for adoption by James's stepfather, M.H. (Mark). We hold the evidence supports the termination of Tom's parental rights under N.D.C.C. § 14–15–19(3)(b). We also hold the procedure for terminating Tom's parental rights did not deprive him of due process and his conclusory allegations are insufficient to show ineffective assistance of counsel. We affirm.

---

1. All names used in this opinion are pseudonyms.

## I

[¶ 2] Tom and M.M.H. (Mary) are the natural parents of James, who was born on December 18, 1988. Tom and Mary have never been married, and Mary has had custody of James since his birth. In February 1996, Mark and Mary were married. Mark petitioned to adopt James and to terminate Tom's parental rights. The court consolidated Mark's petition with a pending paternity action and appointed counsel to represent Tom, an indigent inmate at a federal penitentiary in Oklahoma.

[¶ 3] At trial, Tom testified by telephone and was represented by his court-appointed counsel. The parties initially stipulated Tom was James's natural father, and after a further hearing, the court terminated Tom's parental rights and granted Mark's petition for adoption. Tom moved for a rehearing, alleging the court erred in terminating his parental rights and he received ineffective assistance of counsel. The court denied Tom's motion, and he appealed.

[¶ 4] The district court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. §§ 14–15–04 and 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. Art. VI, §§ 2 and 6, and N.D.C.C. §§ 14–15–15 and 28–27–01.

## II

[¶ 5] Tom contends the court erred in terminating his parental rights. He argues the evidence was insufficient to show he abandoned James. He also asserts Mark and Mary frustrated his contacts with James, and the court erred in not considering their behavior in terminating his parental rights.

### A

[¶ 6] Before Mark can adopt James, Tom's status as James's natural father must be severed. *See, e.g., Matter of Adoption of A.M.M.*, 529 N.W.2d 864, 866 (N.D.1995). *See generally* N.D.C.C. ch. 14–15 (Revised Uniform Adoption Act). Consent to the termination of parental rights severs the parent-child relationship. *A.M.M.* at 864. Under N.D.C.C. § 14–15–06(1)(e), consent is not required if the court has terminated parental rights under N.D.C.C. § 14–15–19.

[¶ 7] A party seeking termination of the parent-child relationship must prove the elements necessary to support termination by clear and convincing evidence. *Matter of Adoption of P.R.D.*, 495 N.W.2d 299, 302 (N.D.1993). Clear and convincing evidence means evidence which leads to a firm belief or conviction the allegations are true. *A.M.M.* at 866. In parental termination cases, we review factual findings de novo; however, we give substantial weight to the trial court's findings and we recognize the court's superior position to decide questions of demeanor and credibility. *A.M.M.*

### B

[¶ 8] Here, the trial court found the evidence supported the termination of Tom's parental rights under N.D.C.C. § 14–15–19(3)(a)–(c), which provides:

"3.  In addition to any other proceeding provided by law, the relationship of parent and child may be terminated by a court order issued in connection with an adoption proceeding under this chapter on any ground provided by other law for termination of the relationship, and in any event on the ground (a) that the minor has been abandoned by the parent, (b) that by reason of the misconduct, faults, or habits of the parent or the repeated and continuous neglect or refusal of the parent, the minor is without proper parental care and control, or subsistence, education, or other care or control necessary for his physical, mental, or emotional health or morals, or, by reason of physical or mental incapacity the parent is unable to provide necessary parental care for the minor, and the court finds that the conditions and causes of the behavior, neglect, or incapacity are irremediable or will not be remedied by the parent, and that by reason thereof the minor is suffering or probably will suffer serious physical, mental, moral, or emotional harm, or (c) that in the case of a parent not having custody of

a minor, his consent is being unreasonably withheld contrary to the best interest of the minor."

[¶ 9] Although Tom focuses his argument on the issue of abandonment, the trial court's decision to terminate his parental rights was not limited to abandonment. Rather, the court terminated Tom's parental rights under N.D.C.C. § 14–15–19(3)(a)–(c), and we decide this case under subsection (b).

[¶ 10] In *P.R.D.* at 301–302, we harmonized N.D.C.C. §§ 14–15–19(3)(b) and 27–20–44(1)(b) and held those provisions authorized the termination of parental rights if (1) a child is deprived, (2) the conditions and causes of the deprivation are likely to continue, and (3) the child is suffering, or will probably suffer serious physical, mental, moral or emotional harm. *See also Matter of Adoption of J.S.P.L.,* 532 N.W.2d 653, 664 (N.D.1995).

[¶ 11] In *P.R.D.* at 302 (citations omitted), we discussed the definition of a deprived child, quoting from *In Interest of T.J.O.,* 462 N.W.2d 631, 633 (N.D.1990):

"'The definition of a deprived child is broad enough to encompass a child whose parent, while never having had the opportunity to care for the child, is shown to be presently incapable of providing proper parental care for the child.... A child may be found to be a deprived child with regard to a parent even though that child has at all times received adequate foster or other proper care from a source other than that parent.... Prognostic evidence may be relied upon to find that a child is a deprived child if it shows that the parent, although not having custody of the child, would be presently unable to supply physical and emotional care for the child, with the aid of available social agencies, if necessary, and that the inability would continue for sufficient time to render improbable the successful assimilation of the child into a family if that parent's rights were not presently terminated.'"

[¶ 12] When James was born, Tom was incarcerated in Oklahoma. Tom has been incarcerated on three or four different occasions for all but about two years of James's life. In 1995, Tom pled guilty to threatening Mark with serious bodily injury during an interstate telephone call. Tom's current incarceration for that crime, by itself, is insufficient to support the termination of his parental rights. *See J.S.P.L.* at 664; *Matter of Adoption of J.W.M.,* 532 N.W.2d 372, 379 (N.D.1995). The nature of the crime for which an inmate is incarcerated, however, is a relevant factor in deciding whether to terminate the inmate's parental rights. *J.S.P.L.* at 665. Tom also conceded he had eight or nine other felony convictions. While incarcerated, Tom continued to make harassing telephone calls to Mark and Mary, causing them to block collect calls on their private telephone line. There was evidence Tom then made repeated harassing telephone calls to Mary at her place of employment. Tom testified his access to James had been restricted by Mary since she began her relationship with Mark. Those restrictions are not insignificant, but they do not excuse Tom from making an effort to build a relationship with James. *See A.M.M.* at 867; *Matter of Adoption of A.M.B.,* 514 N.W.2d 670, 673 (N.D.1994). Moreover, Mary's hesitation to allow Tom contact with James cannot be viewed in a vacuum. Those limitations coincided with Tom's threatening and harassing telephone calls to Mark and Mary. We agree with the trial court's observation Tom's predicament was one of his own making. *See A.M.M.* (father's misconduct caused unemployment and did not obviate his child support responsibility).

[¶ 13] The evidence establishes Tom acted unreasonably and inappropriately regarding his relationship with Mary and her relationship with Mark. Tom's harassing telephone calls started after Mary began a relationship with Mark. There also was evidence Tom resisted an attempt to establish paternity when James was born, but asserted his paternity after Mary began a relationship with Mark. *See A.M.B.* at 673–74 (father's denial of paternity until filing of petition for adoption supported termination of parental rights).

[¶ 14] Mary also testified Tom provided only about $300 for support for James and never spent any meaningful time with

him. Tom acknowledged he had seen James only for brief periods and not more than seven times. Tom testified he had paid about $1,000 for support for James, although there was no court order for support. The absence of a court order, however, does not absolve Tom from his parental responsibilities. *A.M.B.* at 673–74. *See* N.D.C.C. § 14–09–08. We have repeatedly cautioned issues involving the termination of parental rights are of grave importance and should not be treated lightly; however, parental rights do not spring fully from the biological connection between a parent and child, and noncustodial parents should not treat lightly their rights and responsibilities toward their minor children. *J.W.M.* at 379; *A.M.M.* at 866; *A.M.B.* at 672.

[¶ 15] Here, the trial court found (1) Tom had contributed no more than $300 to $1,000 for the support of James; (2) Tom had resisted an attempt to establish paternity when James was born; (3) Tom had been convicted of eight or nine felonies and had been incarcerated for most of James's life, with the latest incarceration for threats against Mark; (4) Tom had admitted seeing James no more than seven times and there were periods when Tom was not incarcerated and did not visit James; (5) Tom was eager to acknowledge his paternity after Mark's petition to terminate Tom's parental rights; (6) Tom has been a poor role model for James; (7) Tom has an alcohol problem and has sought treatment several times; and (8) Tom was presently incapable of supplying physical care, emotional care, or monetary support for James or providing him with proper parental care.

[¶ 16] The trial court's findings regarding the criteria for termination of parental rights under N.D.C.C. § 14–15–19(3)(b) and *P.R.D.* could be more comprehensive. Under our de novo standard of review and giving substantial weight to the court's findings and opportunity to observe the demeanor and credibility of the witnesses, however, we conclude the evidence clearly and convincingly supports the termination of Tom's parental rights under N.D.C.C. § 14–15–19(3)(b).

## III

[¶ 17] Tom argues the procedure for terminating his parental rights denied him due process. He concedes he did not have a constitutional right to personally appear at the termination hearing. He asserts, however, he could have testified by deposition or by written interrogatories. He also claims he was not allowed to communicate with his attorney during the hearing. He argues those deficiencies deprived him of due process.

[¶ 18] Prisoners do not have a constitutional due process right to personally appear at a proceeding for the termination of their parental rights. *J.W.M.*, 532 N.W.2d at 376–377. Prisoners' due process rights generally are satisfied if they are represented by counsel and have an opportunity to appear by deposition or other discovery technique. *J.W.M.* at 376.

[¶ 19] Here, Tom testified at the termination hearing by telephone and was represented by court-appointed counsel during the proceeding. In response to a question by his counsel, Tom made a narrative statement explaining his relationship with James. Moreover, the record does not support Tom's assertion he was precluded from communicating with his attorney during the hearing. Under these circumstances, Tom's alleged due process violations did not result in an unacceptable risk of an erroneous factual decision. *See J.W.M.* at 377. We reject Tom's due process argument.

## IV

[¶ 20] Tom argues he received ineffective assistance of counsel because his court-appointed counsel failed to communicate with him and failed to apprise him of the applicable law. He asserts he was misinformed about the proceedings, and his counsel presented no evidence to substantiate his support of James or his communications with James.

[¶ 21] In termination proceedings, an indigent parent has a right to court-appointed counsel. *Matter of Adoption of K.A.S.*, 499 N.W.2d 558, 563 (N.D.1993). In criminal cases, a party claiming ineffective

assistance of counsel must provide this Court with some evidence to support the claim, unless the record affirmatively shows ineffectiveness of constitutional dimensions. *E.g., State v. McDonell,* 550 N.W.2d 62, 64–65 (N.D.1996). Statements by counsel are not enough to support the claim, and we require some proof in the form of an affidavit or testimony. *McDonell* at 65. Without an adequate record scrutinizing the reasons for counsel's action, review is virtually impossible. *McDonell.*

[¶ 22] We have not recognized a claim for ineffective assistance of counsel in a civil action. We do not decide whether such a claim is cognizable because, assuming we would adopt the claim, Tom's general allegations of ineffective assistance of counsel in his brief and motion for rehearing were insufficient to establish his claim. His conclusory statements do not meet the minimum threshold to support a claim for ineffective assistance of counsel.

### V

[¶ 23] We affirm the order terminating Tom's parental rights.

[¶ 24] VANDE WALLE, C.J., and NEUMANN, MARING, and MESCHKE, JJ., concur.

