2004 ND 150

**In the Matter of the ADOPTION OF S.R.F., a minor child.**

**R.F. and D.F., Petitioners and Appellees,**

v.

**C.A.M., natural mother, Respondent and Appellant,**

S.D.S., natural father, and Julie Hoffman, Administrator of the Adoption Services Division of the North Dakota Department of Human Services, Respondents.

No. 20030364.

Supreme Court of North Dakota.

July 22, 2004.

Gary D. Ramsey, Greenwood & Ramsey, Dickinson, N.D., for petitioners and appellees.

Robert A. Keogh, Dickinson, N.D., for respondent and appellant.

SANDSTROM, Justice.

[¶ 1] The biological mother appeals from a judgment terminating her parental rights to her child and granting the petitioners' adoption petition. We conclude the trial court's findings of abandonment under N.D.C.C. §§ 14–15–06(1)(a) and 14–15–19(3)(a) are not clearly erroneous, and we affirm.

I

[¶ 2] The child was born in May 1999. His biological parents were never married to each other, and they had been involved in a nomadic relationship for about three years before the child's birth. According to the mother, they had traveled around the country by automobile or by hitchhiking, and they had supported themselves by unloading trucks and panhandling. In August 1999, the mother and the father separated, and with the help of the petitioners, the mother moved with the child to Dickinson, where the mother's parents lived. In October 1999, the mother and child began living with the petitioners, who were friends of the mother's parents. According to the mother, in February 2000, the petitioners kicked her out of their house because she had come home drunk, and they refused to let her take the child with her. According to the petitioners, they asked the mother to move out of the house because of her use of alcohol and drugs.

[¶ 3] In March 2000, the petitioners were appointed temporary guardians of the child with the mother's consent, and in May 2000, they were appointed permanent guardians. The child has numerous physical, health, and developmental problems, including a reflux disorder, frequent seizures, chronic diarrhea, a sleep disorder, and allergies to milk protein and soy products. The child is also on a feeding tube approximately twenty hours per day and is delayed in almost all areas of development, including his fine motor, gross motor, cognitive, and speech and language skills. Since May 2000, the petitioners and the child have lived together in Dickinson, and the mother has lived in Fargo with relatively little contact with the child.

[¶ 4] In January 2003, R.F. and D.F. petitioned under N.D.C.C. ch. 14–15 to adopt the child and to terminate the biological parents' parental rights. After a hearing at which the father did not appear to contest the termination of his parental rights, the trial court concluded the mother's consent to the adoption was not required under N.D.C.C. § 14–15–06(1)(a), (b), and (j), because (1) she had abandoned the child; (2) for a period of at least one year she had failed to provide care and support of the child as required by law; and (3) she had failed without justifiable cause to establish a substantial relationship with the child, or to manifest a significant parental interest in the child. The court also terminated the mother's parental rights under N.D.C.C. § 14–15–19(3)(a) and (b), concluding she had abandoned the child and the child was without proper care. The court granted R.F. and D.F.'s petition to adopt the child.

[¶ 5] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 14–15–04 and 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 14–15–15 and 28–27–01.

## II

[¶ 6] Under N.D.C.C. ch. 14–15, before the petitioners can adopt the child, the biological parents' parental rights must be severed. *See Adoption of J.M.H.*, 1997 ND 99, ¶ 6, 564 N.W.2d 623. "Consent to the termination of parental rights severs the parent-child relationship." *Id.* Under N.D.C.C. § 14–15–06(1):

Consent to adoption is not required of:

a.  A parent who has deserted a child without affording means of identification or who has abandoned a child.

b.  A parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause:

    . . . .

    (2) To provide for the care and support of the child as required by law or judicial decree.

    . . . .

e.  A parent whose parental rights have been terminated by order of court under section 14–15–19.

    . . . .

j.  A parent of the minor, if the failure of the parent to consent is excused by the court in the best interest of the child by reason of the parent's prolonged unexplained absence, unavailability, incapacity, or significant failure, without justifiable cause, to establish a substantial relationship with the minor or to manifest a significant parental interest in the mi-

nor, or by reason of inability of the court to identify the parent.

Section 14–15–19(3), N.D.C.C., provides:

In addition to any other action or proceeding provided by law, the relationship of parent and child may be terminated by a court order issued in connection with an adoption action under this chapter on any ground provided by other law for termination of the relationship, and in any event on the ground:

a.  That the minor has been abandoned by the parent;

b.  That by reason of the misconduct, faults, or habits of the parent or the repeated and continuous neglect or refusal of the parent, the minor is without proper parental care and control, or subsistence, education, or other care or control necessary for the minor's physical, mental, or emotional health or morals, or, by reason of physical or mental incapacity the parent is unable to provide necessary parental care for the minor, and the court finds that the conditions and causes of the behavior, neglect, or incapacity are irremediable or will not be remedied by the parent, and that by reason thereof the minor is suffering or probably will suffer serious physical, mental, moral, or emotional harm;

[¶ 7] A party seeking termination of the parent-child relationship in the context of an adoption proceeding must prove the elements necessary to support termination by clear and convincing evidence. *Adoption of J.M.H.*, 1997 ND 99, ¶ 7, 564 N.W.2d 623. Clear and convincing evidence means evidence that leads to a firm belief or conviction the allegations are true. *Id.* This Court previously has reviewed factual findings for termination of parental rights in adoption proceedings under a procedure

similar to the former trial de novo, with substantial weight given to the trial court's findings because of its superior position to decide questions of demeanor and credibility. *Id. See In re A.N.*, 201 N.W.2d 118, 121 (N.D.1972) (in juvenile cases, N.D.C.C. § 27–20–56 authorizes review under language similar to the former trial de novo provisions of N.D.C.C. § 28–27–12, which had been repealed and replaced by N.D.R.Civ.P. 52(a)). Effective March 1, 2004, this Court amended N.D.R.Civ.P. 52(a) to provide that findings of fact in juvenile matters shall not be set aside on appeal unless clearly erroneous. *Interest of T.T.*, 2004 ND 138, ¶ 5, 681 N.W.2d 779. That amendment has effectively overruled cases applying the procedure for de novo review of juvenile matters. *See, e.g., Interest of D.Q.*, 2002 ND 188, ¶ 9, 653 N.W.2d 713; *Interest of C.R.C.*, 2001 ND 83, ¶ 5, 625 N.W.2d 533; *Interest of M.L.*, 239 N.W.2d 289, 291 (N.D.1976); *In re A.N.*, 201 N.W.2d at 120–21; *In re J.Z.*, 190 N.W.2d 27, 29 (N.D.1971). Because N.D.R.Civ.P. 52(a) has been amended to exclude de novo review in juvenile cases, there is no reason to retain de novo review under the Revised Uniform Adoption Act, and we overrule those cases applying the procedure for de novo review under the Act. *See, e.g., Adoption of J.W.M.*, 532 N.W.2d 372, 379 (N.D.1995); *Adoption of P.R.D.*, 495 N.W.2d 299, 302 (N.D.1993); *Adoption of Lackey*, 362 N.W.2d 66, 68 (N.D.1985); *Pritchett v. Executive Dir. of the Soc. Serv. Bd.*, 325 N.W.2d 217, 220 (N.D.1982). Rule 52(a), N.D.R.Civ.P., governs our standard of review in this case.

[¶ 8] A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Hogan v. Hogan*, 2003 ND 105, ¶ 6, 665 N.W.2d 672. A trial court's choice between two permissible views of the weight

of the evidence is not clearly erroneous, and simply that we may have viewed the evidence differently does not entitle us to reverse the trial court. *Id.* (quoting *Schmaltz v. Schmaltz*, 1998 ND 212, ¶ 6, 586 N.W.2d 852). "On appeal, we do not reweigh conflicts in the evidence." *Center Mut. Ins. Co. v. Thompson*, 2000 ND 192, ¶ 20, 618 N.W.2d 505.

[¶ 9] The trial court decided parental consent for the adoption was not required under N.D.C.C. § 14–15–06(1)(a), (b), and (j), and the mother's parental rights were terminated under N.D.C.C. § 14–15–19(3)(a) and (b).

### A

[¶ 10] In *Adoption of A.M.M.*, 529 N.W.2d 864, 866 (N.D.1995) (quoting *Adoption of A.M.B.*, 514 N.W.2d 670, 672 (N.D.1994)), we said abandonment is a question of fact and outlined the following criteria to determine abandonment:

> we look to such factors as the parent's contact and communication with the child, the parent's love, care and affection toward the child, and the parent's intent. Also relevant is the parent's acceptance of parental obligations, such as "to care for, protect, support, educate, give moral guidance to, and provide a home for the child." "A parent's negligent failure to perform his parental duties is significant to the issue of abandonment."

In *Adoption of J.W.M.*, 532 N.W.2d at 379, we said an intent to abandon may be inferred from circumstantial evidence such as conduct.

[¶ 11] The mother claims the following findings by the trial court are not supported by the evidence:

> 15. [The mother] acknowledges that she has not had any real involvement with [the child's] care since she left him in the [petitioners'] care. She also ac-

knowledges that she has had only minimal and sporadic contact with [the child] since he has been in the [petitioners'] care. From February, 2000, up to January 23, 2003, the date of the Petition in this case, [the mother] had not spent more than 24 hours actually visiting with [the child]. After leaving [the child] with the [petitioners] in February, 2000, she only saw him approximately nine times during the rest of that year. In 2001 she again only saw him a total of nine times. In 2002 she saw him 12 times. From the beginning of this year she has only seen him on approximately six occasions. When she does see [the child] she does not spend all that much time with him. At most she will spend from a half hour to an hour with him at a time. She has never spent any significant time alone with [the child]. She has never been alone with him overnight. Also from February, 2000, up to January 23, 2003, she only called the [petitioners] approximately 12 times to inquire about [the child]. There have been times when she has been in Dickinson and she has not called the [petitioners] or stopped in to see [the child]. The [petitioners] have never prevented her from seeing or having contact with [the child].

. . . .

31. [The mother] has failed, without justifiable cause, to establish a substantial relationship with the child in the past, and she offered no reasonable plan for establishing any in the near future. She has taken no action to terminate the guardianship and for the return of the child to her.

[¶ 12] The mother argues the evidence establishes the petitioners have prevented her from having contact with her son and have purposely denied her any opportunity to prepare herself to take care of her son's medical needs. She argues that if she has not established a substantial relationship with her son, it is in large part justifiable and due to the actions of the petitioners.

[¶ 13] The trial court found the petitioners had not prevented the mother from seeing or having contact with the child, and that court was in a better position than this Court to judge the evidence and the credibility of the witnesses. There is evidence the mother failed to make meaningful contact with the child and had not spent more than twenty-four hours with the child from February 2000 to January 2003. Despite having won $5,000 in a contest while in Fargo, the mother failed to provide for the child's care and support during the three and one-half years the child lived in Dickinson with the petitioners. The mother acknowledged she had not had any real involvement with the child's care and had only minimal and sporadic contact with the child since she left him with the petitioners. There is evidence the mother had never spent any significant time with the child, and she had failed to establish a substantial relationship with the child or to manifest a significant parental interest in the child. There is also evidence the mother has not offered any plan to establish a relationship with the child. The mother's actions constitute a negligent failure to perform her parental duties, which is significant to the issue of abandonment. See A.M.M., 529 N.W.2d at 866. The mother's conduct toward the child evidences an intent to have little involvement with the child and supports an inference she intended to abandon the child. Giving due regard to the trial court's opportunity to judge the credibility of the witnesses, we are not left with a definite and firm conviction the trial court made a mistake in finding the mother had abandoned the child. We therefore hold the trial court's findings of clear and convincing evidence of abandonment are not clearly erroneous. We thus conclude the mother's consent for the adoption was not

required under N.D.C.C. § 14–15–06(1)(a), and the termination of her parental rights was warranted under N.D.C.C. § 14–15–19(3)(a).

### B

[¶ 14] Because our resolution of the abandonment issue is sufficient to support the trial court's decision, we need not address the other grounds found by the trial court for finding the mother's consent to the adoption was not required, *see* N.D.C.C. § 14–15–06(1)(b) and (j), and the termination of her parental rights was appropriate under N.D.C.C. § 14–15–19(3)(b).

### .C

[¶ 15] The mother argues the trial court erred in deciding the adoption was in the best interests of the child. We review this issue under the clearly-erroneous standard. *See Adoption of Lackey,* 362 N.W.2d at 68. We conclude the trial court's finding the adoption was in the best interests of the child is not clearly erroneous.

### III

[¶ 16] We affirm the judgment.

[¶ 17] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.