689 N.W.2d 403 (2004)
2004 ND 216
In the Matter of the ADOPTION OF H.R.W., a minor child
C.M.W., Petitioner and Appellee
v.
J.C.S., Respondent and Appellant.
The Executive Director of the North Dakota Department of Human Services, Respondent.
No. 20040108.
Supreme Court of North Dakota.
November 19, 2004.
*404 Janet M. Gregory (on brief), Eslinger, Farroh & Gregory, P.L.L.P., Grand Forks, N.D., for petitioner and appellee.
Kevin B. Spaeth (on brief), Spaeth, Thelen & Jasmer, Grand Forks, N.D., for respondent and appellant.
MARING, Justice.
[¶ 1] J.C.S. ("John")[1] the natural father of H.R.W. ("Helen") appealed from a judgment terminating his parental rights and granting the petition of C.M.W. ("Charles") to adopt Helen. We affirm.

I
[¶ 2] Helen's mother, C.J.W. ("Carla") met John in 1997. They resided together for about two years, between December 1997 and October 1999. Helen was born in August 1998, and the parties acknowledge that John is her natural father. In 1999, John and Carla separated. John moved to his hometown in Michigan and Carla remained with Helen in North Dakota.
*405 [¶ 3] In 2001, Carla met and married Charles. They moved to Texas in April 2002. During this time they had marital problems and divorced. They later reconciled, moved back to North Dakota, and remarried in February 2003. In July 2003, Charles filed a petition to adopt Helen. After an evidentiary hearing, at which John was present and represented by counsel, the court terminated John's parental rights to Helen and granted Charles' petition to adopt Helen.

II
[¶ 4] On appeal, John asserts the trial court erred in terminating his parental rights. Generally, parental consent is a prerequisite to adoption. N.D.C.C. § 14-15-05. However, N.D.C.C. § 14-15-06(1) provides exceptions:
1. Consent to adoption is not required of:
a. A parent who has deserted a child without affording means of identification or who has abandoned a child.
b. A parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause:
(1) To communicate with the child; or
(2) To provide for the care and support of the child as required by law or judicial decree.
A party seeking termination of the parent-child relationship in the context of an adoption proceeding must prove the elements necessary to support termination by clear and convincing evidence. In re Adoption of S.R.F., 2004 ND 150, ¶ 7, 683 N.W.2d 913. Clear and convincing evidence means evidence which leads to a firm belief or conviction the allegations are true. Id. Under N.D.R.Civ.P. 52(a), as amended effective March 1, 2004, the findings of fact by the trial court in matters of adoption will not be set aside on appeal unless clearly erroneous. Id. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. Hogan v. Hogan, 2003 ND 105, ¶ 6, 665 N.W.2d 672.
[¶ 5] The trial court found that John's parental rights to Helen should be terminated, because John abandoned Helen and for at least one year failed without justifiable cause to communicate with the child or to provide for her care and support. On this issue, the court made the following specific relevant findings:
The court finds that [John] has abandoned [Helen]. He has not communicated significantly with her and has failed to provide court ordered support to her. There is no justifiable reason for his failure to pay child support and he appears to have had the means to do so and evaded his responsibilities. His argument that [Carla] prevented him from significantly communicating with [Helen] because of her conduct is rejected. He could and should have made an effort to become involved when the chance for doing so was offered. A child should not have to wait indefinitely for a biological father to mature sufficiently to be able to fill the parental role of father. [John] did not put forth the effort to be a parent, and [Helen] should not be penalized for that failure.
[T]he court finds in the present case that [John] simply did not show any substantial commitment to the care and well-being of [Helen]. [Carla] did not refuse him contact with [Helen], and even as recently as the summer of 2002, he did not take any action to go to Texas and be with [Helen] and [Carla] when [Carla] made that offer.

*406 The court is of the opinion that [John] has abandoned [Helen] by his failure to make child support payments as ordered for a period in excess of one year and by his failure to maintain significant contacts with the child. Clear and convincing evidence has been presented to that effect.
Section 14-15-01, N.D.C.C., defines the term "abandon:"
1. "Abandon" means:
a. As to a parent of a child not in the custody of that parent, failure by the noncustodial parent significantly without justifiable cause to:
(1) Communicate with the child; or
(2) Provide for the care and support of the child as required by law.
[¶ 6] In determining whether abandonment has taken place, we look to such factors as the parent's contact and communication with the child, the parent's love, care and affection toward the child, and the parent's intent. Matter of Adoption of A.M.B., 514 N.W.2d 670, 672 (N.D.1994). Also relevant is the parent's acceptance of parental obligations such as providing care, protection, support, education, moral guidance, and a home for the child. Id. A casual display of interest by a parent does not preclude a finding of abandonment, and a parent's negligent failure to perform parental duties is significant to the issue. Matter of Adoption of J.W.M., 532 N.W.2d 372, 379 (N.D.1995), overruled on other grounds by In re Adoption of S.R.F., 2004 ND 150, ¶ 7, 683 N.W.2d 913 (de novo review of court findings overruled and clearly erroneous standard applied).
[¶ 7] John concedes that even though he made $40,000 in 2002, he has not paid any child support toward Helen's care. A judgment entered in August 2002 ordered John to pay support for Helen of $298 per month, but as of November 2003 he had paid no support and was $7,427 in arrears.
[¶ 8] John concedes the last time he saw Helen was in 2001. However, John asserts that Carla does not want him in Helen's life and has made it difficult for him to have any contact with the child. Carla concedes she did not want Helen to know John was her father until Helen was older and better able to understand the situation. However, Carla asserts she did not prohibit visitations and did not attempt to prevent John from having contact with Helen. Carla testified that John has not contacted Helen or attempted to speak with her since July 2001. Carla testified that on rare occasions when John would call Carla he did not ask to speak to Helen. She also testified that John has provided no gifts for Helen and has not attempted to maintain any type of relationship with her.
[¶ 9] The evidence supports the trial court's findings that John has failed significantly without justifiable cause to communicate with Helen or to provide for her care and that he has effectively abandoned her. We conclude those findings are not clearly erroneous.

III
[¶ 10] John also asserts the trial court erred in deciding the adoption of Helen by Charles was in the child's best interest. We review this issue under the clearly erroneous standard. S.R.F., 2004 ND 150, ¶ 15, 683 N.W.2d 913. On this issue, the trial court made the following significant finding:
[T]he petition should be granted so that [Helen] has two parents who are committed to her care and well-being.... [Carla] and [Charles], the Petitioner herein, are in the best position to provide the parenting that [Helen] needs, *407 and it is in [Helen's] best interests for the court to grant the petition.
Carla testified that Charles has a "wonderful relationship" with the child. With regard to his relationship with Helen, Charles testified:
A It's wonderful. We do everything together. She's my little sidekick. We go out and build snowmen. We color. We practice reading. We practice the alphabet. We count. We go to church. I take her to Sunday School. I drive her to school in the morning. She comes everywhere with me. Last weekend we went up and seen [sic] her grandma just me and the kids. We do everything together. We're always together. We play. We rough-house. We wrestle. It's a wonderful relationship.
Q Do you feel it's a close father/daughter type of relationship?
A Very close, yes.
We conclude the trial court's finding that the adoption was in Helen's best interest is not clearly erroneous.

IV
[¶ 11] We conclude the trial court did not err in terminating John's parental rights to Helen and in granting Charles' petition to adopt her. Judgment affirmed.
[¶ 12] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.
NOTES
[1] The names of the parties are pseudonyms.