Filed 8/17/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 154

In the Matter of A.M.W., a Minor Child

A.M.W. and L.M.W., Petitioners and Appellants

v.

North Dakota Department of Human Services, Respondent

and

M.L.F., Respondent and Appellee

No. 20100013

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Robert O. Wefald, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Daniel James Nagle, P.O. Box 1266, Mandan, N.D. 58554-7266, for petitioners and appellants.

Carey Ann Goetz, P.O. Box 1695, Bismarck, N.D. 58502-1695, for respondent and appellee.

Matter of A.M.W.

No. 20100013

Kapsner, Justice.

[¶1] 
A.W. and L.W. appeal from a district court order denying their petitions to terminate the parental rights of M.F. and for adoption.  
Because we conclude the district court’s findings of fact are not clearly erroneous, we affirm.

I

[¶2] A.W. is the mother and M.F. is the father of a child born in 2006.  A.W. and M.F. were never married.  In August 2008, A.W. married L.W.  In March 2009, A.W. and L.W. filed petitions in the district court for the termination of M.F.’s parental rights and for L.W.’s adoption of the child.  In their petition to terminate M.F.’s parental rights, A.W. and L.W. asserted grounds under N.D.C.C. § 14-15-19, including M.F.’s purported failure without justifiable cause to significantly communicate with the child for a year in addition to his failure to provide the required care and support of the child.

[¶3] The district court held a hearing on November 24, 2009.  At the hearing, the court heard testimony from A.W., L.W., and M.F., in addition to testimony from M.F.’s mother, sister, and girlfriend.  On November 25, 2009, the court entered an order denying the petitions.  In its order, the district court found there was not clear and convincing evidence of M.F.’s intent to abandon the child.  The court observed that M.F. initially had an unrestricted parent and child relationship with the child until the entry in August 2007 of a second amended judgment in a separate action, which addressed child custody and visitation, and in which M.F. was made subject to supervised visitation with the child through M.F.’s mother.  When M.F.’s mother moved to Lisbon, a third amended judgment addressing custody and visitation was entered in June 2008, permitting M.F. supervised visitation only through the Family Safety Center.

[¶4] The district court found M.F. had been unable to make the necessary arrangements to visit the child through the Family Safety Center, in part because A.W. did not provide information to the Family Safety Center “on a timely basis.”  The court also found that, although M.F. made little or no child support payments for approximately 18 months, “he ha[d] at least made some child support payments.”  The court concluded the evidence for termination of M.F.’s parental rights was not clear and convincing and denied both the petition to terminate parental rights and the petition for adoption.  
A.W. and L.W. appealed.

II

[¶5] 
Parental consent is generally a prerequisite to adoption.  N.D.C.C. §§ 14-15-

05, 14-15-06. Consent, however, is not required of:

a. A parent who has deserted a child without affording means of identification or who has abandoned a child.

b. A parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause:

(1) To communicate with the child; or

(2) To provide for the care and support of the child as required by law or judicial decree.

. . . .

e. A parent whose parental rights have been terminated by order of court under section 14-15-19.

 

N.D.C.C. § 14-15-06(1).  Parental rights, including the right to withhold consent to an adoption, may be terminated under N.D.C.C. § 14-15-19(3), which provides:

[T]he relationship of parent and child may be terminated by a court order issued in connection with an adoption action under [N.D.C.C. ch. 14-15] on any ground provided by other law for termination of the relationship, and in any event on the ground:

a. That the minor has been abandoned by the parent;

b. That by reason of the misconduct, faults, or habits of the parent or the repeated and continuous neglect or refusal of the parent, the minor is without proper parental care and control, or subsistence, education, or other care or control necessary for the minor’s physical, mental, or emotional health or morals, or, by reason of physical or mental incapacity the parent is unable to provide necessary parental care for the minor, and the court finds that the conditions and causes of the behavior, neglect, or incapacity are irremediable or will not be remedied by the parent, and that by reason thereof the minor is suffering or probably will suffer serious physical, mental, moral, or emotional harm; or 

c. That in the case of a parent not having custody of a minor, the noncustodial parent’s consent is being unreasonably withheld contrary to the best interest of the minor.

 

[¶6] “A party seeking termination of the parent-child relationship in the context of an adoption proceeding must prove the elements necessary to support termination by clear and convincing evidence.”  
In re Adoption of H.R.W.
, 2004 ND 216, ¶ 4, 689 N.W.2d 403; 
see also
 
In re Adoption of H.G.C.
, 2009 ND 19, ¶ 10, 761 N.W.2d 565.  Clear and convincing evidence means evidence that leads to a firm belief or conviction the allegations are true.  
H.G.C.
, at ¶ 10; 
H.R.W.
, at ¶ 4.  Whether a child has been abandoned presents a question of fact, which will not be reversed on appeal unless it is clearly erroneous.  
See
 
B.L.L. v. W.D.C.
, 2008 ND 107, ¶ 5, 750 N.W.2d 466.  

[¶7] A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made.  
H.R.W.
, 2004 ND 216, ¶ 4, 689 N.W.2d 403 (citing 
Hogan v. Hogan
, 2003 ND 105, ¶ 6, 665 N.W.2d 672).  A district court’s choice between two permissible views of the evidence is not clearly erroneous, and we will not reverse the district court’s decision simply because we may view the evidence differently.  
See
 
In re Adoption of S.R.F.
, 2004 ND 150, ¶ 8, 683 N.W.2d 913.

III

[¶8] 
A.W. and L.W. argue that the district court erred in denying their petition to relinquish and terminate parental rights.  A.W. and L.W. contend that the court’s order contains three basic findings: “there was not clear and convincing evidence of intent to abandon; [A.W.] contributed to the lack of visitation by not contacting the Family Safety Center in a timely fashion; and while [M.F.], ‘went though about 18 months with little or no child support payments being made by him, he has at least made some child support payments.’” A.W. and L.W. argue, in relation to a determination of abandonment, all of the court’s findings are clearly erroneous.

[¶9] For purposes of N.D.C.C. ch 14-15, the legislature has defined the term “abandon” to mean:

a. As to a parent of a child not in the custody of that parent, failure by the noncustodial parent significantly without justifiable cause to:

(1) Communicate with the child; or

(2) Provide for the care and support of the child as required by law.

 

N.D.C.C. § 14-15-01(1). We have also provided criteria a district court should consider in deciding whether a child has been abandoned:

“[W]e look to such factors as the parent’s contact and communication with the child, the parent’s love, care and affection toward the child, and the parent’s intent.  Also relevant is the parent’s acceptance of parental obligations, such as ‘to care for, protect, support, educate, give moral guidance to, and provide a home for the child.’  ‘A parent’s negligent failure to perform his parental duties is significant to the issue of abandonment.’”

 

H.G.C.
, 2009 ND 19, ¶ 12, 761 N.W.2d 565 (quoting 
S.R.F.
, 2004 ND 150, ¶ 10, 683 N.W.2d 913).  “A parent’s intent to abandon may be inferred from the parent’s conduct.”  
H.G.C.
, at ¶ 12.  
Cf.
 
In re Adoption of Lily T.
, 2010 ME 58, ¶ 21 (“As with a parent’s long-term incarceration, a parent’s prohibition from contact with a child pursuant to a protection from abuse order or other court order, should not, standing alone, constitute abandonment.  However, like an incarcerated parent, such a parent is obligated, due to ‘the separation caused by’ the orders, to make ‘an even greater effort to foster a nurturing relationship’ with the child ‘using the means available’ if he or she wants to maintain a parental relationship with the child.” (citations omitted)).  The district court must therefore draw the inferences regarding a parent's intent to abandon from the conduct and the efforts made by the parent to maintain and foster the relationship.

[¶10] A.W. and L.W. assert that, before the November 2009 hearing, M.F. had last exercised visitation in either June or July of 2008.  At the time of the hearing, M.F. was living in Fargo.  M.F. had moved from Bismarck and away from his child because he was “getting into too much trouble [in Bismarck].”  He also apparently had active warrants for his arrest.  M.F. moved to Minnesota without a driver’s license and without viable or reliable means of transportation.  A.W. testified there was a six month period without phone contact between August 2008 and February 2009, which M.F. testified was wrong of him.  But, M.F. also testified that he had attempted two calls during that period.  A.W. testified that she always timely returned M.F.’s calls and attempted to foster M.F.’s visitation and relationship with the child.

[¶11] A.W. asserts that, since a June 2008 third amended judgment, M.F. had exercised no visitation and did not complete the orientation process at the Family Safety Center until July 2009.  M.F. paid no support from October 2007 until June 2009, other than an income tax refund and stimulus check seized by the State.  Further, a June 2009 payment was a $250 bond paid for release from imprisonment.  A.W. testified that L.W. has developed a strong parental relationship with the child, and asserts that A.W. had no part in hindering visitation or M.F.’s voluntary withdrawal from the child’s life.  A.W. asserts that, apart from the six months during which there were no calls, in other months M.F. would make about two calls per month to the child.  A.W. and L.W. argue that M.F. has not accepted his parental obligations.

[¶12] M.F. argues, on the other hand, that a review of the entire record supports the district court’s finding that M.F. did not abandon the child for purposes of N.D.C.C. § 14-15-19.  M.F. contends the evidence reveals conflicting testimony, which is insufficient to sustain a finding of clear and convincing evidence.  M.F. asserts that, although A.W. testified M.F. never gave the child gifts, she conceded he may have done so while in M.F.’s mother’s care.  A.W. testified M.F. failed to exercise visitation at the Family Safety Center, but she refused his visitation request in November 2009, several days before the hearing, because it interfered with her work schedule.  The evidence showed that A.W. did not complete her orientation at the Family Safety Center until a couple of weeks after M.F. had done so in July 2009.  Additionally, although A.W. testified M.F. only called the child about twice a month beginning in February 2009, M.F. testified that he called two to three times per week.

[¶13] M.F. maintains that the child still calls him dad, that he had no intent to abandon his child, and that he contacts the child several times per week by telephone.  M.F. asserts that he has had a lapse in contact because he was working to get his life in order and was hindered by a lack of transportation.  M.F. testified that, at the time of the hearing and the months leading up to it, things were getting better and he had regained the means to visit the child at the Family Safety Center in Bismarck.

[¶14] M.F. testified that before the entry of the third amended judgment, he had exercised visitation with the child while at his mother’s house, which occurred every other weekend.  M.F.’s mother also testified that M.F. would see the child under her supervision, that they would have fun together, and that the child liked to be with him.  Although M.F. conceded his child support payments were sporadic, M.F. anticipated his payments would become more regular given his full-time employment in Fargo.  M.F. also testified that he had made child support payments while working in Minnesota, but the employer failed to remit them.  At the time of the hearing, M.F. testified he had been sober for more than four months, was gainfully employed, intended to pay his child support obligation and to spend more time with the child, and agreed to voluntarily attend parenting classes.

[¶15] A.W. and L.W., however, contend this Court has decided cases with factual patterns of abandonment similar to the present case in which the parent’s rights were terminated.  
See, e.g.
, 
H.G.C.
, 2009 ND 19, ¶¶ 2-5, 761 N.W.2d 565; 
H.R.W.
, 2004 ND 216, ¶ 8, 689 N.W.2d 403; 
S.R.F.
, 2004 ND 150, ¶ 11, 683 N.W.2d 913; 
In re Adoption of J.W.M.
, 532 N.W.2d 372, 374-75 (N.D. 1995), 
overruled by
, 
S.R.F.
, at  ¶ 7 (overruling cases applying a de novo review under the Revised Uniform Adoption Act).  However, in 
H.G.C.
, 
H.R.W.
, and 
S.R.F.
, this Court affirmed under the clearly erroneous standard of review district court orders finding abandonment and terminating parental rights, and 
J.W.M.
 involved a de novo review of the facts by this Court.  In this case, the district court’s order denied the petition to terminate M.F.’s parental rights, specifically finding there was not clear and convincing evidence to support the termination of M.F.’s parental rights.  

[¶16] M.F. unequivocally testified that, despite his absence,
 he did not intend to abandon his child.  M.F. acknowledged his prior criminal background and substance abuse problems, but testified that he had checked himself voluntarily into an inpatient treatment program and continued to participate in outpatient treatment to address his substance abuse problems.  Testimony from his girlfriend supported his assertions regarding his ongoing efforts toward sobriety.  Further, although the child support payment ledger showed minimal payments over the prior almost 18 months, M.F. testified that he had been employed in Minnesota, that some of his pay stubs showed child support payments had been taken out, but that his employer failed to remit payments.

[¶17] In this case, we are faced on appeal with a credibility issue regarding M.F.’s testimony and the district court’s findings regarding M.F.’s contact with the child and payment of “some” child support.  It is not this Court’s function to reweigh the evidence on appeal.  
See
 
S.R.F.
, 2004 ND 150, ¶ 8, 683 N.W.2d 913.  In determining whether a child has been “abandoned,” this Court lacks more definitive guidance from the legislature in defining what abandonment is.  We are thus left to rely on the district court’s findings and our standard of review.  While we may have found differently regarding whether M.F. had abandoned the child under these facts and circumstances, there is evidence in the record to support the court’s findings, that there was not clear and convincing evidence M.F. intended to abandon his child and that he had attempted to pay at least some support.  Upon the entire record, we are not left with a definite and firm conviction that a mistake has been made, and the district court’s findings are not clearly erroneous.

IV

[¶18] The district court order denying A.W. and L.W.’s petitions for the termination of M.F.’s parental rights and for adoption is affirmed.

[¶19] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.