2006 ND 126

In the Interest of E.G., a Child, and A.S., a Child.

Carmen Hickle, Petitioner and Appellee

v.

E.G., Child; A.S., Child; V.G., Mother; L.S., Father; and the guardian ad litem, Susan Schmidt; and the Executive Director of Human Services Department, State of North Dakota, Respondents.

V.G., Mother, Respondent and Appellant.

Nos. 20050447–20050448.

Supreme Court of North Dakota.

June 5, 2006.

Justin J. Schwarz, Assistant State's Attorney, Courthouse, Bismarck, N.D., for petitioner and appellee.

Thomas M. Jackson (argued) and Bradley D. Peterson, Legal Services of North Dakota, Bismarck, N.D., for respondent and appellant.

SANDSTROM, Justice.

[¶ 1] V.G. appeals the juvenile court order terminating her parental rights. She contends the juvenile court erred when it found that her children were deprived, that the deprivation was likely to continue, and that the children would, as a result of the continued deprivation, suffer harm. Concluding the juvenile court's findings of fact are not clearly erroneous, we affirm.

I

[¶ 2] V.G. and L.S. are the parents of E.G. and A.S. The children suffer from several mental and psychological disorders. E.G. is currently diagnosed with attention deficit hyperactivity disorder ("ADHD") combined type, a phonological disorder, pervasive developmental disorder, enuresis, bed-wetting, disruptive behavioral disorder, and mild mental retardation. A.S. is currently diagnosed with ADHD combined type, a phonological disorder, and moderate mental retardation. V.G., the children's mother, suffers from diabetes, renal failure, and a bad disk in her back, and she requires regular kidney dialysis. V.G. has been admitted to several hospitals and a nursing home in recent years. Her treating physician testified she has received treatment for her back, which is improving.

[¶ 3] In August 2003, V.G. voluntarily placed E.G. in foster care, and A.S. was voluntarily placed in January 2004, because V.G. was having difficulty controlling them. In July 2004, the children's foster care was involuntarily continued when the juvenile court found the children were deprived.

[¶ 4] In July 2005, Carmen Hickle, a social worker with Burleigh County and Morton County Child Protection Services, petitioned to terminate the parental rights of both parents. According to Hickle, the children continued to be deprived because V.G. was at that time in a nursing home and because she could not control them. A guardian ad litem was appointed for the children, and she recommended the parental rights of both parents be terminated. After a hearing, the juvenile court terminated the rights of both parents.

[¶ 5] On appeal, V.G. argues the juvenile court erred because there is not clear and convincing evidence that the children were deprived, that the deprivation is likely to continue, and that the children are likely to suffer harm because of the deprivation. She contends that because her condition has improved, she is able to care for the children. The petitioner argues the juvenile court did not err when it terminated V.G.'s parental rights.

[¶ 6] The juvenile court had jurisdiction under N.D.C.C. § 27–20–03(1)(b). The notice of appeal was not timely under N.D.C.C. § 27–20–56(1) but was timely under N.D.R.App.P. 4(a). This Court extended the time to file the notice of appeal. *See Interest of C.R.H.*, 2000 ND 222, ¶ 4, 620 N.W.2d 175 ("The statutory 30–day time for appeal is not absolute and this Court can grant extensions of time for filing an appeal under the statute."). This Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 27–20–56(1).

II

[¶ 7] For a court to terminate a person's parental rights, the petitioner must prove by clear and convincing evidence: (1) "The child is a deprived child," (2) "The conditions and causes of the deprivation are likely to continue or will not be remedied," and (3) "that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm." N.D.C.C. § 27–20–44(1)(b); *Interest of M.B.*, 2006 ND 19,

¶ 13, 709 N.W.2d 11. Clear and convincing evidence is "evidence that leads to a firm belief or conviction the allegations are true." *Adoption of S.R.F.*, 2004 ND 150, ¶ 7, 683 N.W.2d 913. A juvenile court's decision to terminate parental rights is a question of fact that will not be overturned unless the decision is clearly erroneous. N.D.R.Civ.P. 52(a); *M.B.*, at ¶ 13. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made." *S.R.F.*, at ¶ 8.

### A

[¶ 8] First, the petitioner must prove the child is a deprived child. N.D.C.C. · § 27–20–44(1)(b). "Deprived child" is statutorily defined as a child:

> without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian[.]

N.D.C.C. § 27–20–02(8)(a). "Proper parental care" means the "minimum standards of care which the community will tolerate." *Interest of J.R.*, 2002 ND 78, ¶ 9, 643 N.W.2d 699.

[¶ 9] Dr. Kevin Dahmen, the children's psychiatrist, testified E.G. had been hitting, kicking, and biting his brother and mother. He also testified that when he observed the children and the mother together during treatment sessions, the children were out of control and the mother often did nothing to discipline them. Dr. Dahmen testified that although the children's mental and psychological problems were genetic, their behavioral problems resulted from parenting problems. Rose-

mary Eymann, a parenting aide who worked with the family, testified V.G.'s former home in Lincoln, North Dakota, was a "real mess," including dog and cat food on the floors and V.G.'s dog and cat entering and exiting through windows. She testified V.G. did not give the children any limits. Eymann also testified she was concerned for the children's safety. Kristen Love, a licensed social worker, care coordinator, and case manager with West Central Human Services, testified the children were verbally and physically aggressive. Elysia Buffington, a therapeutic social worker, testified she was concerned for the children's safety. She testified that on one occasion, one child had gotten out of V.G.'s car while it was moving. She also testified that when V.G. had the children on visits, she had not given them their medication. This testimony supports the juvenile court's finding by clear and convincing evidence that the children were deprived. The court did not clearly err when it concluded each child met the definition of a deprived child.

### B

[¶ 10] Second, the petitioner must prove that the deprivation is "likely to continue or will not be remedied." N.D.C.C. § 27–20–44(1)(b)(1). The petitioner must provide prognostic evidence, demonstrating the deprivation will continue, and the petitioner cannot rely on past deprivation alone. *Interest of T.K.*, 2001 ND 127, ¶ 14, 630 N.W.2d 38. "Prognostic evidence, including reports and opinions of the professionals involved, that forms the basis for a reasonable prediction as to future behavior must be evaluated in determining if a child's deprivation is likely to continue." *Interest of D.Q.*, 2002 ND 188, ¶ 21, 653 N.W.2d 713 (citing *Interest of D.F.G.*, 1999 ND 216, ¶ 20, 602 N.W.2d 697). A parent's lack of cooperation in

parenting classes or with social workers is probative, as is the parent's background. *M.B.*, 2006 ND 19, ¶ 16, 709 N.W.2d 11.

[¶ 11] In cases of special-needs children, the juvenile court may take the special needs of the children into account when deciding whether the deprivation is likely to continue. *Interest of L.J.*, 436 N.W.2d 558, 561 (N.D.1989). In *L.J.*, this Court concluded that the parents of special-needs children are required to meet a quantum of parenting that will allow the children to reasonably meet their potential and that the leeway given to the parents is limited because of the special needs of the children:

> In the case of the special-needs-child, the minimum care that a community will tolerate must necessarily include not only providing basic necessities of food, shelter, and clothing, but also providing the quantum of supervision, supportive education and nurture that will permit the child's reasonable development given the child's reasonable potential. A parent is not expected to do more than to provide the care and control necessary under the circumstances. When a child's potential is limited, so is the leeway of a parent to meet minimum standards.

*Id.*

[¶ 12] Dr. Dahmen testified that because of the children's condition, they will need a great deal of supervision and assistance, possibly for their entire lives. He testified E.G. and A.S. are in "the top five percent" of children as far as difficulty to treat. He testified he is concerned V.G. will be unable to control either child. Dr. Dahmen also testified that after he wrote a letter recommending the termination of V.G.'s rights, a new concern arose. He testified E.G.'s behavior had become worse, and when asked why, E.G. told Dr. Dahmen that he did not have to behave any more or listen to his foster parents because he was going to live with his mother again. Dr. Dahmen testified that having V.G. "involved" with the children was not helping "at this point."

[¶ 13] Dr. Dahmen also testified as to V.G.'s lack of cooperation in the children's treatment. He testified that during treatment sessions, the children would become disruptive and V.G. would sit "motionless" and not discipline the children. He testified the children's foster mother would have to prompt V.G. to discipline the children. Dr. Dahmen also testified V.G. had not improved through parenting aide sessions.

[¶ 14] Eymann testified V.G. had missed "quite a few" meetings with her. Eymann testified V.G. said she "didn't learn a thing" from the nurturing classes she had taken. She testified V.G.'s visitation with the children had gone from supervised to unsupervised, but then back to supervised shortly thereafter because the children had "boundary issues." Love testified that when the children were with V.G. full-time in May 2004, E.G.'s behavior became worse. She also testified V.G. had made very little progress in achieving parenting goals. Hickle testified social workers discontinued unsupervised visits after three months because the boys' behavior was "very disruptive after the visits," similar to Eymann's testimony. Hickle testified the only progress she had seen in V.G. was in her physical condition, not in her ability to care for E.G. and A.S. This testimony supports the juvenile court's finding by clear and convincing evidence that if the children were returned to the care of their mother, their deprivation would be likely to continue. The juvenile court's finding that the deprivation is likely to continue or will not be remedied is not clearly erroneous.

## C

[¶ 15] Finally, the petitioner must prove "the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm." N.D.C.C. § 27–20–44(1)(b)(1). This element may also be shown by prognostic evidence. *M.B.*, 2006 ND 19, ¶ 18, 709 N.W.2d 11.

[¶ 16] Dr. Dahmen testified that after V.G. was released from a nursing home, E.G.'s behaviors worsened because he believed he would be living with V.G. and did not need to behave anymore. Dr. Dahmen testified this case is a "classic example" of children doing well in the foster setting and then relapsing in the primary home. Eymann and Hickle both testified unsupervised visits had to be discontinued because the children's behavior had deteriorated after the unsupervised visits. Hickle testified V.G.'s only improvements have been in her physical condition, not her parenting skills. This testimony supports the juvenile court's finding by clear and convincing evidence that if V.G.'s rights are not terminated and the boys are returned to her, they "will probably suffer serious physical, mental, moral, or emotional harm." N.D.C.C. § 27–20–44(1)(b)(1). The juvenile court's finding of fact is not clearly erroneous.

## III

[¶ 17] The juvenile court's findings were not clearly erroneous, and we affirm its order terminating V.G.'s parental rights.

[¶ 18] WILLIAM F. HODNY, S.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 19] The Honorable WILLIAM F. HODNY, Surrogate Judge, sitting in place of VANDE WALLE, C.J., disqualified.