761 N.W.2d 565 (2009)
2009 ND 19
In the Matter of the ADOPTION OF H.G.C.
B.A.C., Petitioner and Appellee,
v.
N.W.P., Respondent and Appellant, and
Carol Olson, as Executive Director of the North Dakota Department of Human Services, Respondent.
No. 20080096.
Supreme Court of North Dakota.
February 3, 2009.
*566 Leslie Johnson Aldrich, Johnson Law Office P.C., Fargo, N.D., for petitioner and appellee.
Mark T. Blumer, Valley City, N.D. 58072, for respondent and appellant.
SANDSTROM, Justice.
[¶ 1] N.P. appeals from a district court order terminating his parental rights to H.G.C., a minor child he has with A.C. We conclude the district court's findings of abandonment under N.D.C.C. § 14-15-19(3)(a) are not clearly erroneous, and we affirm.

I
[¶ 2] In October 2007, B.C. petitioned to terminate N.P.'s parental rights and for a step-parent adoption of H.G.C. According to testimony at the hearing, H.G.C. was born to N.P. and A.C. in 2001. N.P. and A.C. were never married to each other, but they occasionally lived together, including periods after the child was born. N.P. testified he had H.G.C. in his care approximately half of the time until 2003. A 2003 judgment granted A.C. and N.P. joint legal custody and granted A.C. physical custody of H.G.C. N.P. was granted visitation with H.G.C. every Wednesday and every other weekend, and N.P. exercised the scheduled visitation until sometime in 2005. N.P. was required to pay child support and one-half of the uncovered medical expenses under the 2003 judgment. N.P. sporadically paid child support until January 2005, when he stopped paying support; however, he began making very small payments of approximately ten dollars per month in November 2006 and began paying larger amounts in January 2007, including some of his arrearages.
[¶ 3] In October 2005, N.P. voluntarily began in-patient chemical dependency treatment, but had to end his treatment on November 18, 2005, to serve time in jail on outstanding warrants. After N.P. was released from jail on December 19, 2005, he visited H.G.C. a few times, but he stopped visitation in March 2006 after A.C. told N.P. he was no longer allowed to see the child. N.P.'s family also ended contact with the child around the same time period.
[¶ 4] In July 2006, N.P. was arrested for felony possession of drug paraphernalia, and he was incarcerated until December 2006. N.P. sent a letter to A.C. and a birthday card to H.G.C. in October 2006. N.P. also sent A.C. and H.G.C. a card in December 2006. N.P. did not receive a response to either the letter or the cards. After his incarceration, N.P. lived at the Bismark Transition Center until May 2007, and he received chemical dependency and *567 gambling addiction treatment. N.P. began working full-time and started paying child support regularly.
[¶ 5] In August 2007, A.C. married B.C., whom she had met in 2004. Before A.C. married B.C., she lived with her parents in the home her parents had lived in for more than 30 years. In September 2007, N.P. tried to call A.C. at her parents' house, but he was unable to speak to her and he left a phone number for A.C. to call him back. A.C. testified she tried to contact N.P. using the phone number he gave, but she was unable to reach him.
[¶ 6] After a hearing, the district court granted B.C.'s petition to terminate N.P.'s parental rights in an April 2008 order, finding:
4. [N.P.] has been in and out of jail and the penitentiary throughout [the child's] life. [N.P.] has a significant criminal history. In 2005, his visitation came to an end. [N.P.] was using illegal drugs and had entered inpatient treatment. At best, his last visit with [the child] was before Easter in 2006. [N.P.'s] mother and family stopped contact with [the child] in late 2005, as well. In July 2006, he was arrested and later sentenced to 18 months in the penitentiary for felony drug paraphernalia, among other charges. He had eight warrants at the time. He is in excess of $16,000 behind in child support payments for [the child]. He made only one telephone call to [A.C.'s] mother's house in September 2007 and 2008. He sent no presents, cards, letters for [the child] in 2007. He sent three cards from the Penitentiary-two in October 2006 (one for [A.C.]) and one in December 2006. The last gift was for [the child's] birthday in October 2005. He has abandoned the child. He has had no significant meaningful contact with [the child] since about March 2006.
. . . .
7. That the natural mother, [A.C.], has never been married to the natural father, [N.P.]. She has not received any child support payments from [N.P.] with respect to the child for two years and support has been spotty. [N.P.] has never provided health insurance, nor paid medical co-pays for [the child]. He did not attend the Children of Divorce class as ordered in the 2003 Amended Judgment. [N.P.] has never had a driver's license, nor made any attempt to obtain one. [A.C.] does not have a home telephone number or address for [N.P.] He did provide the Expressway Inn address in Bismarck, North Dakota at the January 2008 hearing. [A.C.'s] parents have lived at the same address for 30 years. [A.C.] worked for NDSU for 7 years. [A.C.] did not hide herself or [the child] from [N.P.]. [N.P.] has no substantial relationship with [the child] since 2004, it was off and on in 2005, and ended in spring 2006. He abandoned [the child] and withholding his consent is unreasonable and not in [the child's] best interest.
8. That the natural father, [N.P.] has not relinquished parental rights or consented to the termination of rights to the child. [The child] should not have to wait indefinitely for [N.P.], the biological father, to mature sufficiently to be able to fill the parental role of father. [N.P.], although noble in his efforts to stay sober, has failed [the child], leaving others to perform parental duties.
. . . .
11. That [N.P.] has not shown nor expressed any sufficient interest in the minor child. The termination is in [the child's] best interest.
. . . .
13. Service was properly made on Respondent by Sheriff and mail. The Defendant, *568 [N.P.], filed no papers with the Court but did testify. [N.P.] had no justification for not sending cards, letters or presents to [the child]. He has no justification for two years of not paying child support.
(Emphasis omitted). N.P. appealed the findings and order terminating his parental rights. B.C.'s petition for step-parent adoption was not addressed or disposed of, and this Court temporarily remanded to allow the district court to consider entry of a N.D.R.Civ.P. 54(b) order or for further proceedings on the petition for step-parent adoption. On remand, the district court entered a final decree of adoption.
[¶ 7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 14-15-04 and 27-05-06. This appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 14-15-15 and 28-27-02.

II
[¶ 8] N.P. argues there was not clear and convincing evidence that he abandoned H.G.C. or that he unreasonably withheld his consent to the adoption, contrary to the child's best interests.
[¶ 9] Generally, a parent must consent to the adoption of his child; however, consent is not required of:
a. A parent who has deserted a child without affording means of identification or who has abandoned a child.
b. A parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause:
(1) To communicate with the child; or
(2) To provide for the care and support of the child as required by law or judicial decree.
. . . .
e. A parent whose parental rights have been terminated by order of court under section 14-15-19.
N.D.C.C. § 14-15-06(1). A parent's parental rights, including the right to withhold consent to an adoption, may be terminated in certain circumstances under N.D.C.C. § 14-15-19(3), which provides:
the relationship of parent and child may be terminated by a court order issued in connection with an adoption action under [N.D.C.C. ch. 14-15] on any ground provided by other law for termination of the relationship, and in any event on the ground:
a. That the minor has been abandoned by the parent;
b. That by reason of the misconduct, faults, or habits of the parent or the repeated and continuous neglect or refusal of the parent, the minor is without proper parental care and control, or subsistence, education, or other care or control necessary for the minor's physical, mental, or emotional health or morals, or, by reason of physical or mental incapacity the parent is unable to provide necessary parental care for the minor, and the court finds that the conditions and causes of the behavior, neglect, or incapacity are irremediable or will not be remedied by the parent, and that by reason thereof the minor is suffering or probably will suffer serious physical, mental, moral, or emotional harm; or
c. That in the case of a parent not having custody of a minor, the noncustodial parent's consent is being unreasonably withheld contrary to the best interest of the minor.
[¶ 10] A party seeking termination must prove all the elements by clear and convincing evidence. In re *569 Adoption of H.R.W., 2004 ND 216, ¶ 4, 689 N.W.2d 403. Clear and convincing evidence is evidence that leads to a firm belief or conviction the allegations are true. Id. Whether a child has been abandoned is a question of fact, and a finding of fact will not be reversed on appeal unless it is clearly erroneous. B.L.L. v. W.D.C., 2008 ND 107, ¶ 5, 750 N.W.2d 466. A finding of fact is clearly erroneous if there is no evidence to support it, or if there is some supporting evidence, this Court is left with a definite and firm conviction a mistake has been made. Id.
[¶ 11] Here, the district court terminated N.P.'s parental rights under N.D.C.C. § 14-15-19(3)(a) and (c), finding N.P. had abandoned H.G.C. and had unreasonably withheld his consent to the adoption. N.P. argues there was not clear and convincing evidence he abandoned H.G.C. and he had justifiable cause for failing to communicate with the child or provide care. He contends there was no evidence he intended to abandon H.G.C., there was evidence he was involved in the child's life until A.C. would not allow any further visitation, he attempted to continue contacting the child, and he provided child support whenever he could. He also claims he did not unreasonably withhold his consent to the adoption.
[¶ 12] The legislature has specifically defined the term "abandon" for purposes of N.D.C.C. ch. 14-15:
"Abandon" means:
a. As to a parent of a child not in the custody of that parent, failure by the noncustodial parent significantly without justifiable cause to:
(1) Communicate with the child; or
(2) Provide for the care and support of the child as required by law.
N.D.C.C. § 14-15-01(1). This Court has outlined criteria the district court should consider in deciding whether a child has been abandoned:
[W]e look to such factors as the parent's contact and communication with the child, the parent's love, care and affection toward the child, and the parent's intent. Also relevant is the parent's acceptance of parental obligations, such as "to care for, protect, support, educate, give moral guidance to, and provide a home for the child." "A parent's negligent failure to perform his parental duties is significant to the issue of abandonment."
In re Adoption of S.R.F., 2004 ND 150, ¶ 10, 683 N.W.2d 913 (quoting In re Adoption of A.M.M., 529 N.W.2d 864, 866 (N.D. 1995)). A parent's intent to abandon may be inferred from the parent's conduct. S.R.F., at ¶ 10.
[¶ 13] N.P. claims A.C. frustrated his attempts to have a relationship with the child, because A.C. told him he could no longer see the child and because A.C. did not respond to his attempts to communicate when he tried to contact A.C. and the child. Although it is not insignificant that A.C. told N.P. he could no longer see the child after March 2006 and she did not respond to his letter or cards, N.P. could still have attempted to maintain a relationship with the child. See In re Adoption of J.M.H., 1997 ND 99, ¶ 12, 564 N.W.2d 623. Parental rights require more than just a biological connection; they require a relationship more enduring. In re Adoption of J.W.M., 532 N.W.2d 372, 379 (N.D. 1995). "`[W]hile the ties of a natural parent are not to be treated lightly in adoption proceedings, neither should noncustodial parents treat lightly their rights and responsibilities toward their minor children.'" A.M.M., 529 N.W.2d at 866 (quoting In re Guardianship of T.C.W., 235 Neb. 716, 457 N.W.2d 282, 285 (1990)).
*570 [¶ 14] A.C. lived with her parents until she married B.C. in August 2007. A.C. was employed at the same place of employment for seven years. N.P. testified he knew where A.C.'s parents lived and where she worked, and the district court found A.C. did not hide herself or the child and N.P. could have attempted to contact A.C. at her parents' home or her place of employment. From March 2006 until the petition for termination was filed in October 2007, N.P. made one attempt to call A.C. in September 2007. A.C. testified that she attempted to return his call but was unable to reach him. The 2003 judgment granted N.P. visitation, the ordered visitation was not modified, and N.P. was still entitled to the ordered visitation. Nonetheless, other than two cards sent in 2006 and the phone call in 2007, the record reflects N.P. did not make any attempt to have a relationship or contact the child after March 2006. "A casual display of interest by a parent does not preclude a finding of abandonment; a parent's negligent failure to perform parental duties is significant to the issue of abandonment." J.W.M., 532 N.W.2d at 379. While N.P. paid child support on a regular basis after January 2007, child support is an obligation, and the payment of support is not enough, by itself, to avoid a finding of abandonment. See A.M.M., 529 N.W.2d at 866-67.
[¶ 15] N.P. contends he needed to focus on getting his life together and to become a better person after he got out of prison before he could re-establish a relationship with the child. While incarceration alone is insufficient to establish abandonment, incarceration along with other factors such as parental neglect, withholding affection, failure to provide financial support, and lack of contact can support a finding of abandonment. J.W.M., 532 N.W.2d at 379. N.P. was not incarcerated for the entire period from March 2006, when he last had any meaningful contact with the child, until October 2007, when the termination petition was filed. The district court found N.P.'s efforts to stay sober are noble, but the court also found the child should not have to wait indefinitely for N.P. to mature sufficiently to fill his parental role. Cf. In Interest of C.R., 1999 ND 221, ¶ 10, 602 N.W.2d 520 (parent chose to commit crime while on parole, voluntarily placing himself in prison and demonstrating a serious indifference to his parental responsibilities). When a parent, voluntarily and without reasonable justification, makes himself unavailable to parent a child, the child should not be expected to wait for permanency and stability in his life. In the Interest of T.A., 2006 ND 210, ¶ 16, 722 N.W.2d 548. The evidence indicates N.P. has made very little effort to parent the child since March 2006, and the evidence supports the court's findings that N.P. has failed to perform his parental duties and has abandoned the child.
[¶ 16] The district court considered the proper factors to determine whether N.P. had abandoned the child, and the evidence supports the court's findings. The district court found N.P. had abandoned the child because he has not had any significant meaningful contact with the child since March 2006, he has not had a substantial relationship with the child since 2004, he did not provide any financial support for the child for two years and support was otherwise sporadic, and he knew how to contact A.C. but failed to do so. Under the facts and circumstances of this case, the evidence supports the court's findings that N.P. had abandoned the child, and we are not left with a definite and firm conviction a mistake has been made. We conclude the district court's findings of abandonment are not clearly erroneous, and therefore the termination of N.P.'s parental *571 rights was warranted under N.D.C.C. § 14-15-19(3)(a).
[¶ 17] We need not address N.P.'s argument that the district court erroneously found he unreasonably withheld his consent to the adoption, because we conclude the evidence supports the court's finding that N.P. abandoned the child, and therefore N.P.'s rights were properly terminated. See Hoff v. Fitterer, 2005 ND 186, ¶ 9, 705 N.W.2d 807 (this Court does not address issues that are unnecessary to the resolution of the case).

III
[¶ 18] We conclude the district court's findings of abandonment were not clearly erroneous, and we affirm.
[¶ 19] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.
VANDE WALLE, Chief Justice, concurring.
[¶ 20] If we were to analyze the facts in this case and compare them with the facts in earlier decisions, I might well conclude that abandonment has not been proven by clear and convincing evidence. I write simply to note that our decisions, while outlining the criteria a district court should consider in deciding whether a child has been abandoned, do not establish a bright line nor necessarily establish a point of reference from which future decisions are measured. Rather, if one were to compare the decisions, a task I do not here undertake, that result would be evident. Earlier decisions of the Court appear to indicate that any contact or support of the child might negate a determination of abandonment. Subsequent decisions, perhaps influenced by social mores and the statutory insistence that parents support their children, indicate that intermittent contact or sporadic support of the child are no longer alone sufficient to prevent a finding of abandonment.
[¶ 21] Nor is the fact the termination of parental rights is pursued through a step-parent adoption under the Uniform Adoption Act, Chapter 15-19, N.D.C.C., rather than through a proceeding under the Juvenile Court Act, Chapter 27-20, N.D.C.C., relevant where the basis for termination is abandonment, one of the reasons for termination of parental rights under both proceedings. Indeed, I suggest a trial court should be cautious not to find abandonment by the natural parent where a step-parent is waiting to adopt if the court would not find abandonment from similar facts where there may be no immediate adoption in sight. The definition of abandonment does not change because of the identity or status of the petitioner.
[¶ 22] Nevertheless, while I have some misgiving that B.A.C. proved by clear and convincing evidence N.W.P. abandoned H.G.C., I am mindful of our standard of review on appeal. As the majority opinion notes at ¶ 10, whether a child has been abandoned is a question of fact and a finding of fact will not be reversed on appeal unless it is clearly erroneous. I cannot conclude the trial court was clearly erroneous and I therefore concur in the result reached by the majority opinion.
[¶ 23] Gerald W. VandeWalle, C.J.