2012 ND 153

**In the Interest of A.W., a child.**

**State of North Dakota, Petitioner and Appellee**

**v.**

**A.W., a child, B.W., mother, J.A., father, Respondents,**

**J.A., father, Appellant.**

**No. 20120245.**

Supreme Court of North Dakota.

July 26, 2012.

Lee M. Grossman, Valley City, N.D., for petitioner and appellee; submitted on brief.

Mark T. Blumer, Fargo, N.D., for appellant; submitted on brief.

SANDSTROM, Justice.

[¶ 1] J.A. appeals from a juvenile court order terminating parental rights to his daughter, A.W. We conclude the court's findings that J.A. abandoned the child, that the child is deprived, and that the conditions and causes of the deprivation are likely to continue are supported by clear and convincing evidence and are not clearly erroneous. We affirm.

I

[¶ 2] A.W. was born in 2005 and is currently seven years old. J.A. is her father, and B.W. is her mother. J.A. and B.W. lived in Washington when the child was born, but B.W. and the child moved to North Dakota approximately four years ago. J.A. currently resides in Washington, but works out of state and is often away from home for extended periods of time.

[¶ 3] A.W. has been diagnosed with Sanfilippo Syndrome, type A, which is a metabolic disorder that causes severe neurologic symptoms, bi-lateral hearing loss, speech impairment, and global developmental delays. A.W. requires assistance with most basic daily activities, including eating, grooming, and social interaction. A.W.'s condition will deteriorate as she gets older. Sanfilippo Syndrome is a fatal disease, and children with the disease have a life expectancy of fourteen to seventeen years.

[¶ 4] On December 17, 2010, Barnes County Social Services removed A.W. from her mother's care. On December 21, 2010, the juvenile court found A.W. was a deprived child on the basis of its findings that B.W. locked the child in her room, that B.W. neglected the child's daily needs, and that B.W. failed to meet the child's nutritional and educational requirements. Barnes County Social Services initially placed A.W. in foster homes, but eventually determined a group home would be

more appropriate for the level of care she requires. A.W. is currently placed in a group home in Grand Forks.

[¶ 5] On December 20, 2011, Barnes County Social Services filed a petition to terminate B.W. and J.A.'s parental rights, alleging A.W.'s mental health and medical needs cannot be met in a home setting, B.W. does not have a stable home with services to meet the child's needs, B.W. has not followed through with court-ordered services, B.W.'s involvement with the child has decreased since May 2011, J.A. has not been a part of the child's life for four years, and J.A. has stated he would not be able to care for the child.

[¶ 6] A hearing on the petition was held on May 3, 2012. B.W. was given notice of the hearing but did not appear and was not represented by an attorney. J.A. was represented by an attorney, and he appeared by telephone for part of the hearing. On May 7, 2012, the juvenile court entered an order terminating B.W. and J.A.'s parental rights, finding J.A. abandoned the child, the child is deprived, the deprivation is likely to continue, the criteria for termination has been met for both parents, and there were no compelling reasons presented that would prevent the court from terminating the parents' rights.

[¶ 7] The juvenile court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–20–03(1)(b). J.A.'s appeal was timely under N.D.C.C. § 27–20–56(1) and N.D.R.App.P. 2.2(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 27–20–56(1).

II

[¶ 8] J.A. argues the juvenile court erred in terminating his parental rights. He contends the court's findings that he abandoned A.W., that A.W. is deprived,

and that the conditions and causes of the deprivation are likely to continue are clearly erroneous.

[¶ 9] We will not reverse a juvenile court's findings of fact in a termination case unless they are clearly erroneous, and the court's decision to terminate parental rights is a question of fact. *In re M.G.*, 2010 ND 157, ¶ 10, 786 N.W.2d 710. A finding is clearly erroneous when it is induced by an erroneous view of the law, there is no evidence to support the finding, or, on the basis of the entire record, this Court is left with a definite and firm conviction a mistake has been made. *Id.*

[¶ 10] A court may terminate the parental rights of a parent if the child is deprived and the court finds "[t]he conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm." N.D.C.C. § 27–20–44(1). The party seeking termination must prove the required elements by clear and convincing evidence. *M.G.*, 2010 ND 157, ¶ 10, 786 N.W.2d 710. Clear and convincing evidence is evidence that leads to a firm belief the allegations are true. *Id.*

[¶ 11] Under N.D.C.C. § 27–20–02(8), a child is deprived if the child "[h]as been abandoned by the child's parents, guardian, or other custodian. . . ." A child has been abandoned by a noncustodial parent if the parent, without justifiable cause, fails to communicate with the child or fails to provide for the care and support of the child as required by law. N.D.C.C. § 27–20–02(1). A court's determination that a child has been abandoned is a question of fact. *B.L.L. v. W.D.C.*, 2008 ND 107, ¶ 5, 750 N.W.2d 466. In deciding whether a child has been abandoned, we have said the court should consider:

the parent's contact and communication with the child, the parent's love, care and affection toward the child, and the parent's intent. Also relevant is the parent's acceptance of parental obligations such as providing care, protection, support, education, moral guidance, and a home for the child. A casual display of interest by a parent does not preclude a finding of abandonment, and a parent's negligent failure to perform parental duties is significant to the issue.

*Id.* at ¶ 6 (quoting *In re H.R.W.*, 2004 ND 216, ¶ 6, 689 N.W.2d 403). The parent's intent to abandon the child may be inferred from the parent's conduct. *In re Adoption of H.G.C.*, 2009 ND 19, ¶ 12, 761 N.W.2d 565. The payment of child support, alone, is not sufficient to preclude a finding of abandonment. *Id.* at ¶ 14.

[¶ 12] Here the court ordered the termination of J.A.'s parental rights, finding J.A. abandoned A.W., A.W. was deprived, and the deprivation was likely to continue:

The father has had little involvement in [A.W.'s] life in the past four years. The mother and [A.W.] moved from Washington to North Dakota four years ago. The father testified that he would call the mother every once in a while and speak with [A.W.] The father is current on child support payments but has not had any in-person contact with [A.W.] since the child arrived in North Dakota.

. . . .

There is nothing in the testimony presented to indicate that [A.W.] would ever be able [to] live in the home of either her mother or father. It is contrary to [A.W.'s] welfare and unsafe to return to her mother's home or father's home. It is in [A.W.'s] best interest to remain in a group home setting that can care for her special needs. Reasonable efforts were made to prevent removal

from the home. A permanency plan was in place to try to return [A.W.] to her mother's home. Reasonable efforts were made by [Barnes County Social Services] to preserve and reunify [A.W.] with her mother. Reasonable efforts were made to find a suitable relative placement.

. . . .

The father's conduct shows that deprivation would likely continue in his care. The father lives in Washington but works in California and Arizona for weeks at a time. The father made some minimal effort since January 2012 to comply with the requirements of [Barnes County Social Services], but only after receiving the affidavit to terminate parental rights. The father's last ditch effort and limited phone contact is not enough to convince the court that deprivation would not continue. The court finds the father has abandoned the child.

The court finds by clear and convincing evidence that the child comes within the provisions of the Uniform Juvenile Court Act, N.D.C.C. ch. 27–20. The criteria for termination of parental rights for both parents, as defined in N.D.C.C. §§ 27–20–20.1 and 27–20–44, have been met by the State. No compelling reasons were presented that would prevent the court from terminating the parental rights for both parents.

■■■ [¶ 13] The definition of a deprived child includes a child who has been abandoned by her parent. N.D.C.C. § 27–20–02(8)(c). The evidence supports the court's findings that J.A. abandoned the child and that the child is deprived. A.W.'s case manager from Barnes County Social Services, Alicia Aune, testified J.A. was not involved with the case when A.W. was removed from the home, and she did not speak to him until January 2011.

Aune testified she tried to call him a few times between January and April 2011 to give him updates about the child. She testified J.A. has made more of an effort to become involved since the petition for termination was filed, she currently talks to him at least twice a month, she last spoke to him two weeks before the hearing, and she asked him to take a parental capacity evaluation, but he was unable to complete it because he does not read English or Spanish. There was evidence J.A. has not seen A.W. since she was 2 years old, and although J.A. pays child support, he has not been involved in the child's life for more than four years. Christa Lippert, a group home employee, testified J.A. has never visited the home, she did not believe J.A. has ever called the home, and she did not find any records showing J.A. called the home. The guardian ad litem testified she has called J.A. three times and left messages for him twice, but he has never returned her calls and she has never had any contact with him. The guardian ad litem testified social services generally contacted J.A. after A.W. was removed from the home, but he began contacting social services more often after the petition for termination was filed. J.A. testified he would try to visit A.W. when he could if his rights were not terminated.

[¶ 14] J.A. contends he did not abandon A.W., because she will never be able to live in a normal home environment and will live in a group home for the remainder of her life. The abandonment, however, is not based on J.A.'s inability to provide the financial means to care for A.W. in a normal home environment. We have said:

In the case of the special-needs-child, the minimum care that a community will tolerate must necessarily include not only providing basic necessities of food, shelter, and clothing, but also providing the quantum of supervision, supportive

education and nurture that will permit the child's reasonable development given the child's reasonable potential. A parent is not expected to do more than to provide the care and control necessary under the circumstances. When a child's potential is limited, so is the leeway of a parent to meet minimum standards.

*In re E.G.*, 2006 ND 126, ¶ 11, 716 N.W.2d 469 (quoting *In re L.J.*, 436 N.W.2d 558, 561 (N.D.1989)).

[¶ 15] Parents of special-needs children do not have a lesser standard that must be met to maintain their parental rights and prevent a finding of abandonment; rather, a finding on abandonment will depend on the facts and circumstances of each case. J.A. has made little effort to be a part of A.W.'s life. J.A. does not have a relationship with the child, and he has not attempted to have any contact with the child since she was removed from B.W.'s home. There was testimony from Katie Pommerer, a parent aid for Barnes County Social Services, that A.W. bonds with the people who take care of her, she smiles, and she has a bond with her mother. The guardian ad litem also testified A.W. smiles when people visit her, and she interacts with most people that give her attention. Although the child has serious disabilities and medical issues that affect her ability to communicate, there was evidence she is currently capable of having a significant relationship with people. J.A. has not contacted the child by telephone since she was removed from the home, and he has not visited her since she moved to North Dakota. J.A. has made almost no effort to be a part of the child's life. " 'A casual display of interest by a parent does not preclude a finding of abandonment; a parent's negligent failure to perform parental duties is significant to the issue of abandonment.' " *H.G.C.*, 2009

ND 19, ¶ 14, 761 N.W.2d 565 (quoting *In re Adoption of J.W.M.*, 532 N.W.2d 372, 379 (N.D.1995)). Although J.A. has consistently paid child support, that is not enough, by itself, to prevent a finding of abandonment. *See H.G.C.*, at ¶ 14. We conclude the evidence supports the court's finding of abandonment and deprivation.

[¶ 16] Our decision is consistent with our more recent decisions in other abandonment cases. *See, e.g., H.G.C.*, 2009 ND 19, ¶ 16, 761 N.W.2d 565 (the court's finding of abandonment was not clearly erroneous when the father had not had any significant meaningful contact with the child in two years, he had not had a substantial relationship with the child in four years, he failed to provide any financial support for two years and support was otherwise sporadic, and he knew how to contact the mother but failed to do so); *In re Adoption of S.R.F.*, 2004 ND 150, ¶ 13, 683 N.W.2d 913 (evidence supported a finding of abandonment when the mother had occasional and sporadic contact with the child over a three-year period, she failed to establish a substantial relationship with the child or manifest a significant parental interest in the child, and she offered no reasonable plan for establishing a relationship); *In re R.M.B.*, 402 N.W.2d 912, 913–14 (N.D.1987) (evidence clearly and convincingly established abandonment, including the mother's occasional brief visits, the mother called the child seven times within approximately one and a half years, the mother called social services monthly but did not often talk about the child, and the mother initially provided child support but eventually stopped sending any money).

[¶ 17] J.A. argues there is no evidence the deprivation will continue, because A.W. is receiving the care she needs through the group home. "In cases of special-needs children, the juvenile court

may take the special needs of the children into account when deciding whether the deprivation is likely to continue." *E.G.*, 2006 ND 126, ¶ 11, 716 N.W.2d 469. "[A]dequate care from a foster parent or a source other than the parent does not prevent a finding of deprivation." *In re A.B.*, 2010 ND 249, ¶ 20, 792 N.W.2d 539. A parent's background and his or her lack of cooperation with social workers is probative in deciding whether the deprivation will continue. *E.G.*, at ¶ 10.

[¶ 18] Although A.W. currently receives the care she requires from the group home, she was not placed in the group home until after she was removed from B.W.'s home. There was evidence A.W.'s needs are so great she cannot live in a normal home environment, and she will need to remain in the group home for the rest of her life. There was evidence A.W. requires a caregiver to remain within visual distance at all times, and someone often must be within arm's reach; her condition will deteriorate as time goes on; she will eventually require a wheelchair; her vision will deteriorate; she will need to be tube fed; and she has a life expectancy of only fourteen to seventeen years. There was evidence A.W.'s needs will continue to increase and important decisions will need to be made about her education, medication, placement, and continuing life when the time comes. Although A.W. has serious disabilities that may make having a relationship with her more difficult, there was evidence that she bonds with her caregivers, she smiles when people visit her, and she can interact with people. J.A.'s contact with social services was minimal until the petition to terminate his parental rights was filed. J.A. has abandoned the child, and he did not present any evidence that his relationship with the child will change in the future. "When a parent, voluntarily and without reasonable justifi-cation, makes himself unavailable to parent a child, the child should not be expected to wait for permanency and stability in [her] life." *H.G.C.*, 2009 ND 19, ¶ 15, 761 N.W.2d 565. The evidence supports the court's findings that A.W. is a deprived child and that the deprivation is likely to continue.

### III

[¶ 19] We conclude the juvenile court's findings are not clearly erroneous, and we affirm the court's order terminating J.A.'s parental rights.

[¶ 20] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.