2016 ND 67

**In the Matter of the ADOPTION OF K.J.C.**

**K.B.C., and B.J.C., Petitioners and Appellees**

v.

**K.J.C., D.V.T. and The Executive Director of the Department of Human**

Service Department, State of North Dakota, Respondents

D.V.T., Appellant.

No. 20150373.

Supreme Court of North Dakota.

March 15, 2016.

Charlotte J.S. Rusch (argued) and Ryan C. McCamy (on brief), Fargo, N.D., for petitioners and appellees.

Michael P. Hurly, Devils Lake, N.D., for appellant.

VANDE WALLE, Chief Justice.

[¶ 1]   D.V.T., the father of minor child K.J.C., appealed from a district court's final decree of adoption, terminating his parental rights and granting a petition for step-parent adoption.  We affirm the decree as modified, concluding the evidence supports the district court's findings and its decision is not clearly erroneous.

I

[¶ 2]   The child was born in 2011.  Although the father's paternity has never been judicially established, the parties agree D.V.T. is the child's father.  The child's mother, K.B.C., was never married to the father and they were not in a relationship together when the child was born.  In December 2014, the mother married B.J.C., the child's step-father.

[¶ 3]   On January 23, 2015, the mother and step-father petitioned for an order terminating the father's parental rights and allowing the step-father to adopt the child.  They alleged the father's consent was not required because the father had not communicated with the child or provid-

ed for the child's care and support for more than one year.

[¶ 4] The father appeared at a hearing on December 7, 2015, and objected to the petition. At the end of the hearing, the district court made oral findings on the record, stating it was terminating the father's parental rights and granting the petition for step-parent adoption. The court found the father's consent was not required because the father failed to be a part of the child's life for four years and the father never contributed any financial support for the child. The court found the adoption was in the child's best interests and ordered the father's parental rights be terminated.

[¶ 5] On December 8, 2015, a final decree of adoption was entered. The court's written order said the required consent for adoption was obtained or excused, no person appeared at the hearing claiming to be the natural father and claiming custodial rights, and the adoption was in the child's best interests. The decree granted the petition for adoption and terminated the father's parental rights.

II

[¶ 6] The father argues the district court clearly erred in terminating his parental rights and finding his consent to the adoption was not necessary. The father contends there was not clear and convincing evidence he intended to abandon the child.

[¶ 7] The trial court's findings of fact in an adoption proceeding, including whether a parent has abandoned a child, will not be reversed on appeal unless they are clearly erroneous. *In re Adoption of S.R.F.*, 2004 ND 150, ¶ 7, 683 N.W.2d 913. A finding is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if there is some supporting evidence, on the

entire record we are left with a definite and firm conviction a mistake has been made. *In re Adoption of I.R.R.*, 2013 ND 211, ¶ 12, 839 N.W.2d 846.

[¶ 8] Generally, a parent of a child must consent to adoption; however, consent is not required of:

b. A parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause:

(1) To communicate with the child; or

(2) To provide for the care and support of the child as required by law or judicial decree.

. . . .

e. A parent whose parental rights have been terminated by order of court under section 14–15–19.

N.D.C.C. § 14–15–06(1).

[¶ 9] Section 14–15–19(3)(a), N.D.C.C., authorizes a court to terminate a parent's parental rights in an adoption action if the parent has abandoned the child, stating:

In addition to any other action or proceeding provided by law, the relationship of parent and child may be terminated by a court order issued in connection with an adoption action under this chapter on any ground provided by other law for termination of the relationship, and in any event on the ground ... [t]hat the minor has been abandoned by the parent[.]

The term "abandon" for purposes of N.D.C.C. ch. 14–15 means:

a. As to a parent of a child not in the custody of that parent, failure by the noncustodial parent significantly without justifiable cause to:

(1) Communicate with the child; or

(2) Provide for the care and support of the child as required by law.

N.D.C.C. § 14–15–01(1).

[¶ 10] We have explained the district court should consider the following factors in deciding whether a parent has abandoned a child:

> [W]e look to such factors as the parent's contact and communication with the child, the parent's love, care and affection toward the child, and the parent's intent. Also relevant is the parent's acceptance of parental obligations such as providing care, protection, support, education, moral guidance, and a home for the child. A casual display of interest by a parent does not preclude a finding of abandonment, and a parent's negligent failure to perform parental duties is significant to the issue.

*I.R.R.*, 2013 ND 211, ¶ 11, 839 N.W.2d 846 (quoting *In re Adoption of H.R.W.*, 2004 ND 216, ¶ 6, 689 N.W.2d 403). We have said it must be shown the parent has an intent to abandon the child; however, the parent's intent may be inferred from the parent's conduct. *S.H.B. v. T.A.H.*, 2010 ND 149, ¶ 8, 786 N.W.2d 706.

[¶ 11] A party seeking termination of parental rights in the context of adoption proceedings must prove all of the elements by clear and convincing evidence. *See In re Adoption of H.G.C.*, 2009 ND 19, ¶ 10, 761 N.W.2d 565. "Clear and convincing evidence is evidence that leads to a firm belief or conviction the allegations are true." *Id.*

[¶ 12] The district court granted the mother and step-father's petition to terminate the father's parental rights and for the step-father to adopt the child. The court found the father abandoned the child, explaining its findings on the record during the hearing:

As far as the significant contacts and the raising of this child, I have heard today that the biological father wants to do things, and he intends to do things. But, this child is almost four years old, and he can't sit around and wait for this stuff to happen later.... [F]our years have passed, and [the father] wasn't there. And he didn't do the things. Now, someone else did. Another father stepped in, and he actually is there daily, and did those things that needed to be done. [The child] needs a father, and he's needed a father for four years, and he didn't get one until now, until he got this fellow. There may have been some interference.... [The father] never did anything about it. He just sat there and waited and intended. But, to whatever extent [the mother] might have interfered, it is certainly not enough to justify his actions.... The other thing that he didn't do is ever contribute a nickel. Not one penny. I mean that's uncontested, that he never contributed anything. Did she have medical bills? Of course she had medical bills. She had a baby. The kid went to the hospital. He knew that. He's going to wait for a bill? I'm sorry, that's just not the way it works.... [A child's] needs are immediate. They need it now, not later when it's convenient and when I can get to it. I'm sorry. To me, I would like to take this under advisement and think about it ... but I don't see any other conclusion that I am ever going to get to, is that [the father's] consent is absolutely unnecessary. He gave up the right to stop this adoption a long time ago.

[¶ 13] The father argues the record does not support the court's finding that he abandoned the child. He claims he frequently attempted to contact the child, but the mother resisted his attempts to communicate with the child and attempted to alienate the child from him. He also

claims his actions show a clear intent to try establish a parent-child relationship and there was no evidence he intended to abandon the child.

[¶ 14] The father testified that he attempted to call the child regularly but the mother often did not answer his phone calls and told him he calls the child too much. The father testified he wanted to be present at the child's birth, but the mother did not tell him when the child was born and he learned of the child's birth from someone else. The district court found the mother may have interfered, but the father "never did anything about it." This Court has recognized a custodial parent's refusal to cooperate with the noncustodial parent's attempts to maintain a relationship with the child is not insignificant in termination proceedings, but the noncustodial parent must continue to attempt to maintain a relationship with the child. *H.G.C.*, 2009 ND 19, ¶ 13, 761 N.W.2d 565. " '[P]arental rights require more than just a biological connection; they require a relationship more enduring,' and '[w]hile the ties of a natural parent are not to be treated lightly in adoption proceedings, neither should noncustodial parents treat lightly their rights and responsibilities toward their minor children.' " *I.R.R.*, 2013 ND 211, ¶ 13, 839 N.W.2d 846 (quoting *H.G.C.*, at ¶ 13).

[¶ 15] Evidence established the child turned four years old days after the hearing and the father has only seen the child two times since the child was born, once when the child was three months old and a second time when the child was one and a half years old. The mother testified the father sporadically called to talk to the child on the telephone, she told him he could call the child on Sundays because that would work best for her and the child, and he called approximately ten times in the year before the hearing. There was no evidence the mother hid the child or prevented the father from seeing the child. The father lives in Colorado and the mother lives in Williston, and the father testified that he will not visit the child in North Dakota. Evidence established the father has a good relationship with the child's maternal grandparents, the maternal grandparents live in Montana and have visitation with the child every other month for more than five days at a time, and the father has only visited the child at their residence one time.

[¶ 16] The evidence also established the father did not provide any financial support for the child. The father testified he sent the child clothing as presents for the child's birthday and at Christmas, and he claims he offered to send money once, but the mother refused his offer and she never sent him any bills for the child's expenses. The mother testified the father was aware the child had medical bills and she told him about the cost of the child's preschool tuition, but he never sent any financial support.

[¶ 17] The father argues he did not have an obligation to provide for the child's care and support "by law or judicial decree" as N.D.C.C. § 14–15–06(1)(b)(2) requires to establish abandonment, because he was not a "presumed father" under N.D.C.C. § 14–20–10 and was never adjudicated to be the child's father. He contends he is only an "alleged father" because his paternity has never been adjudicated and his name is not on the child's birth certificate, and an "alleged father" does not have an obligation under the law or judicial decree to support a child.

[¶ 18] Both parties agree D.V.T. is the child's biological father. Parents have a duty to support their children. *See* N.D.C.C. § 14–09–08; *see also McDowell v. McDowell*, 2003 ND 174, ¶ 13, 670 N.W.2d 876. The absence of a court order

does not absolve a parent of the obligation to support a child. *In re Adoption of A.M.B.*, 514 N.W.2d 670, 673–74 (N.D. 1994). In *A.M.B.*, at 673–74, the father was never married to the child's mother, the father denied paternity, and paternity was never adjudicated, but this Court concluded the father's failure to pay child support was a factor in determining whether he abandoned the child. Furthermore, if D.V.T. does not have a legal obligation to support the child because he is only an "alleged father" and his paternity has not been determined, he does not have standing to object to the petition for adoption. *See* N.D.C.C. § 14–15–05(1)(b) (stating a petition to adopt a minor may be granted only if written consent has been executed by the father of the minor, if the minor is the father's child by adoption, the father otherwise legitimated the minor, or the person is presumed to be the father under state law); N.D.C.C. § 14–15–06(1)(c) (stating consent to adoption is not required of a father if the father's consent is not required under N.D.C.C. § 14–15–05(1)(b)). Both parties testified D.V.T. is the child's father, and therefore he has standing to object to the petition for adoption and he had a legal obligation to support the child.

[¶ 19] The father saw the child two times in four years, he attempted to contact the child by phone to establish and maintain a relationship, and he gave the child gifts but did not provide any financial support. Although the mother may have interfered with the father's phone communications, the father was required to take affirmative steps to perform his parental duties and foster a relationship with the child. *See I.R.R.*, 2013 ND 211, ¶¶ 13–14, 839 N.W.2d 846; *A.M.B.*, 514 N.W.2d at 673. The father's sporadic telephone contact and intent to do more in the future are not sufficient to preclude a finding of abandonment. "When a parent, voluntarily and without reasonable justification, makes himself unavailable to parent a child, the child should not be expected to wait for permanency and stability in his life." *I.R.R.*, at ¶ 13 (quoting *H.G.C.*, 2009 ND 19, ¶ 15, 761 N.W.2d 565). "A casual display of parental interest does not preclude a finding of abandonment, and a parent's negligent failure to perform parental duties is significant to the issue of abandonment." *I.R.R.*, at ¶ 13. Intermittent contact or sporadic support of the child are not sufficient to prevent a finding of abandonment. *H.G.C.*, at ¶ 21 (VandeWalle, J., concurring). The father's intent to abandon the child may be inferred from his conduct. *See id.* at ¶ 12. The father's actions constitute a negligent failure to perform parental duties, which is significant to the issue of abandonment. *See S.R.F.*, 2004 ND 150, ¶ 13, 683 N.W.2d 913. The father's conduct supports an inference he intended to abandon the child. The evidence supports the court's finding the father abandoned the child.

[¶ 20] Our decision is consistent with our prior cases in which we have affirmed a district court's finding that a parent abandoned a child despite allegations the custodial parent was frustrating the non-custodial parent's attempt to establish a relationship with the child.

[¶ 21] In *A.M.B.*, 514 N.W.2d at 673, the father claimed the mother hid herself and the child from him and this Court said the mother's actions were of substantial significance. However, we also considered that the mother did not prohibit the father from seeing the child when he visited on the child's birthday, the father did not pursue the mother's offer to arrange visitation, the father attempted to see the child on one other occasion, the father did not bring an action to establish paternity, and the father did not provide any finan-

cial support. *Id.* at 673–74. We affirmed an adoption decree, concluding the father abandoned the child and his consent to the adoption was not required. *Id.* at 674.

[¶ 22] In *H.G.C.*, 2009 ND 19, ¶¶ 13, 18, 761 N.W.2d 565, we affirmed the district court's finding the father abandoned the child despite the father's claim that the mother frustrated his attempts to have a relationship with the child by telling him he could no longer see the child and refusing to respond to his communication attempts. We held the evidence supported the district court's finding that the father abandoned the child because the evidence established the mother did not hide herself or the child, the father could have attempted to contact the mother, and the father did not make any attempt to have a relationship or contact the child in the two years before his rights were terminated other than a phone call and sending the child two cards. *Id.* at ¶¶ 14–16.

[¶ 23] Similarly, in *I.R.R.*, 2013 ND 211, ¶ 14, 839 N.W.2d 846, we affirmed the district court decision terminating the father's parental rights despite allegations the mother frustrated the father's attempts to have a relationship with the child. The father claimed the mother actively thwarted any contact or relationship between him and the child, she moved and did not tell him where the child was, she obtained a protection order against him, returned all correspondence and packages, and refused any communications and visitation with him or his family. *Id.* at ¶¶ 8, 14. We held the district court's finding the father abandoned the child was not clearly erroneous, and the evidence supported the court's finding the father displayed only a casual interest in the child and did not take affirmative steps to perform his parental duties. *Id.* at ¶ 14.

[¶ 24] Under the facts and circumstances of this case, the evidence supports the court's findings, and, based on the entire record, we are not convinced a mistake has been made. We conclude the court's decision is not clearly erroneous. Termination of the father's parental rights was appropriate under N.D.C.C. § 14–15–19(3) and his consent to the adoption was not required under N.D.C.C. § 14–15–06(1).

### III

[¶ 25] The father argues the district court erred in finding no person appeared at the hearing claiming to be the child's natural father.

[¶ 26] The district court's written order states "the required consents have been obtained or excused, and no person has appeared claiming to be the natural father and claiming custodial rights...." However, the record unequivocally establishes the father appeared at the hearing, advised the court he was opposing the termination of his parental rights, and testified and presented other evidence. The evidence in the record does not support the court's finding about the father's failure to appear at the hearing, but the court made further findings on the record during the hearing explaining its decision and the decision was not based on the father's failure to appear or contest the termination and adoption.

[¶ 27] The record reflects the mother and step-father's attorney prepared the proposed written order before the hearing. We recognize the court wanted the termination and adoption finalized quickly and the use of a document prepared by one of the parties may save time, but the court has an obligation to ensure the findings are correct. The court's written order erred in stating no person appeared at the hearing claiming to be the natural father; however, we con-

clude the error does not require reversal of the order. *See* N.D.R.Civ.P. 61 (stating errors that do not affect a party's substantial rights must be disregarded). We modify the final decree of adoption to reflect the father was present at the hearing and objected to the petition to terminate his parental rights and grant a step-parent adoption.

### IV

[¶ 28] We conclude the district court's decision terminating the father's parental rights and granting a step-parent adoption is not clearly erroneous. We affirm the final decree of adoption as modified.

[¶ 29] DALE V. SANDSTROM, DANIEL J. CROTHERS, LISA FAIR McEVERS and CAROL RONNING KAPSNER, JJ., concur.